Roslyn Sharwell v. Commissioner. Sherman S. Sharwell v. Commissioner.
Sharwell v. Commissioner
Docket Nos. 2743-63, 2744-63.
United States Tax Court
T.C. Memo 1968-89; 1968 Tax Ct. Memo LEXIS 208; 27 T.C.M. (CCH) 416; T.C.M. (RIA) 68089; May 16, 1968. Filed Sol Goodman, for petitioner in docket No. 2743-63. Robert A. Roberts, for the respondent. TIETJENS
Memorandum Findings of Fact and Opinion TIETJENS, Judge: The Commissioner determined deficiencies in income tax and additions to tax for the taxable years 1958 and 1959 as follows: Year
Deficiency
Additions to the tax
under section 6653(b)
1958
$214,155.63
$107,077.82
1959
178,905.74
89,452.87
Respondent has conceded the issues relating to the addition to tax under section 6653(b), I.R.C. 1954. The only questions for our determination *209 are: (1) whether petitioner Roslyn filed a joint income tax return for the taxable years 1958 and 1959, with Sherman, and (2) whether the deficiency notice is valid, (3) in the alternative, if petitioner is found not to have filed a joint income tax return for the years in question, whether she had unreported income for these years, and (4) if so, whether petitioner is also liable for an addition to tax under section 6651(a), I.R.C. 1954, for failure to file a timely tax return. All other questions raised by the parties in their petitions to this Court were not subsequently raised at trial or on brief. Accordingly, we shall consider the parties to have conceded them. Findings of Fact Some of the facts have been stipulated. The stipulation and exhibits attached thereto are incorporated herein by this reference. The Sharwell Tobacco Company, hereinafter referred to as Sharwell Tobacco, is a corporation organized under the laws of the State of Ohio with its principal offices at Columbus, Ohio. During the years 1948 through 1960, Sharwell Tobacco engaged in merchandising tobacco and miscellaneous products at the wholesale level to grocery stores and drugstores. *210 At all times involved herein, the outstanding stock of Sharwell Tobacco was owned 50 percent by Sherman S. Sharwell and 50 percent by Roslyn Sharwell, hereinafter referred to as Sherman and petitioner or Roslyn, respectively. Sherman [1] and Roslyn were married in November 1936, divorced in 1949, remarried in 1950, separated in 1960, and again divorced in April of 1963. For the taxable year 1949, when petitioner was divorced from Sherman, Roslyn filed a separate return. For the taxable years 1950 through 1959, she did not file separate income tax returns. For 1960, when she was separated from Sherman, she again filed a separate tax return. *211 In 1954, petitioner received a distribution from her father's estate in the form of real estate, stocks, bonds, and other assets, with a total value of approximately $200,000. Shortly thereafter, petitioner began to keep careful records of her taxable income and maintained a ledger for each of the taxable years 1955 through 1959 on which she recorded all of her income. Petitioner's records relating to her capital gains and losses for 1954 through 1959 were also kept, and consisted of brokerage slips. With respect to filing income tax returns, petitioner's practice was to examine all of her canceled checks for each calendar year and to determine from these which expenditures represented allowable deductions. She then sent these canceled checks together with her ledger and brokerage slips to Sherman or to Morris Swedlow, Sherman's certified public accountant, so that her records could be used in the preparation of income tax returns and her income included with her husband's. Returns were, in fact, prepared and filed captioned "Sherman S. and Roslyn Sharwell" for each of the taxable years 1954 through 1959. These returns were filed with either the district director of internal revenue, *212 Columbus, Ohio, or the district director of internal revenue, Cincinnati, Ohio, for each of the taxable years 1954 through 1959. In each 418 return the question relating to whether the wife or husband was filing a separate return was answered "No." Each of these returns had a signature, Sherman S. Sharwell and Roslyn Sharwell. Petitioner signed the return for 1954, but did not sign the returns for the years thereafter. During the taxable years 1954 through 1959, petitioner received dividends, rents, interest, and capital gains, as follows: Net Rental
Year
Dividends
Income
Interest
Capital Gains
Total
1954
$3,114.79
$1,480.00
$ 6.68
$25,756.24
$ 30,357.71
1955
4,998.16
2,707.78
60.02
52,270.82
60,036.78
1956
6,000.00
2,482.07
140.00
8,622.07
1957
4,850.00
2,400 .00
200.00
7,450.00
1958
5,012.50
2,042.42
200.00
323.34
7,578.26
1959
4,750.00
2,384.00
240.00
7,374.00
These amounts of income and petitioner's deductions were included in the aforementioned returns for the respective years. At all times material hereto until the end of 1959, petitioner lived with her husband. At that time she separated from *213 Sherman and went to live in New York City. Shortly thereafter, Sherman, whom she had discovered engaging in fraudulent activities with her property, attempted to reconcile with petitioner. Petitioner again turned over all her records to Sherman or his accountant for the purpose of having her income and expenses incorporated in "his" tax return for the years 1958 and 1959. The tax returns for these two years were filed in March 1960 and April 1960, respectively. In the following year, when petitioner filed a separate income tax return for 1960, she answered "No" to the question "Do you owe any Federal tax for years before 1960?" Sherman's books and records were destroyed in a fire sometime prior to the trial. Sherman died on November 3, 1966. It appears that he left no assets. The notice of deficiency mailed to petitioner on March 22, 1963, and addressed to "Mr. Sherman S. Sharwell and Mrs. Roslyn Sharwell," contained the following explanations of adjustments: EXPLANATION OF ADJUSTMENTS Year Ended December 31, 1958 (a) Your reported income for the year 1958 has been increased by additional taxable income in the amount of $274,384.64. (b) It has been determined that the *214 claimed itemized deductions aggregating $2,982.83 are not allowable since you failed to provide substantiation as required. (c) It has been determined that the maximum standard deduction of $1,000.00 is allowable in lieu of itemized deductions. EXPLANATION OF ADJUSTMENTS Year Ended December 31, 1959 (a) Your reported income for the year 1959 has been increased by additional taxable income in the amount of $234,771.95. (b) It has been determined that the claimed itemized deductions aggregating $3,067.62 are not allowable since you failed to provide substantiation as required. (c) It has been determined that the maximum standard deduction of $1,000.00 is allowable in lieu of itemized deductions. Ultimate Findings of Fact Petitioner filed joint income tax returns with Sherman S. Sharwell for the taxable years in question. Petitioner has failed to overcome the presumption of correctness attaching to respondent's determination of the deficiencies. Opinion Joint Returns Initially, the question is whether petitioner filed joint tax returns with Sherman for the taxable years 1958 and 1959, under section 6013(a), [2] I.R.C. 1954.[3] Respondent *215 has determined that the tax returns were joint returns. The burden rests upon petitioner to prove the contrary. Rule 32, Tax Court Rules of Practice; section 7453, I.R.C. 1954; Welch v. Helvering, 290 U.S. 111 (1933). 419 In a number of cases, this Court has upheld respondent's determination that a joint tax return had been filed even though one spouse failed to sign the return. Muriel Heim, 27 T.C. 270, affd. 251 F. 2d 44 (C.A. 8, 1958); Joseph Carroro, 29 B.T.A. 646; Myrna S. Howell, 10 T.C. 859; W. L. Kann, 18 T.C. 1032. In Matthew L. Ladden, 38 T.C. 530, 534, we agreed with the Court of Appeals in Heim v. Commissioner, 251 F. 2d 44 (C.A. 8, 1958), affirming 27 T.C. 270, when *216 the Court stated at page 46: The petitioner, however, contends that whether or not a joint return has been filed is a factual question, the answer to which rests upon a determination of the intent of the taxpayer. The courts have so held. Payne v. United States, 8 Cir., 247 F. 2d 481, 484; McCord v. Granger, 3 Cir., 201 F. 2d 103; Bour v. Commissioner, 23 T.C. 237, 239; Calhoun v. Commissioner, 23 T.C. 4. Petitioner argues that the fact that she did not sign the return is a clear indication that the return was not intended as joint. In Vincent S. Hennen, 35 T.C. 747, 748, this argument was presented and answered as follows: The fact that one spouse fails to sign the return is not always fatal to the finding of a joint return. Muriel Heim, 27 T.C. 270 (1956), affd. 251 F. 2d 44 (C.A. 8, 1958). The determinative factor is whether the spouses intended to file a joint return, their signatures being but indicative of such intent. Hyman B. Stone, 22 T.C. 893 (1954), appeal dismissed. This intent may be inferred from the acquiescence of the nonsigning spouse. * * * We have concluded *217 from all the evidence presented that petitioner has failed to prove that she did not intend to file a joint tax return with her former husband for the years in issue. The evidence points the other way. In 1960, the year the returns in question were filed, petitioner must have known she was required to report her income on a tax return. She was no stranger to the tax laws. She had previously filed a separate return for 1949, the year when she was first divorced from Sherman. For 1960, when she was again separated from Sherman, she also filed a separate return. Over the other years she kept records of her income and expenditures, determined her tax deductible expenditures, and forwarded the information to Sherman or his accountant "to be entered in his return" [in her words]. For these years, 1950 through 1959, she did not file separate returns. Apparently she believed that whatever returns were filed by her husband satisfied her own tax obligations. There is no direct evidence to the contrary. This could only have been accomplished by joint returns, which the returns actually filed purported to be. Furthermore, petitioner signed a joint return for the taxable year 1954, which *218 included relevant tax information personally compiled by petitioner. For all the subsequent years 1955 through 1959, petitioner again gathered her records and gave them to Sherman for the purpose of having them incorporated in tax returns prepared by Swedlow. Petitioner can hardly claim that she did not know that her income was being included with her husband's in tax returns for these years. These facts indicate that petitioner knew she was required to file income tax returns and intended to report her income on the same returns as her husband. We hold that petitioner tacitly consented to the filing of joint returns in the crucial years. In so finding, we again note that in the circumstances of this case, the wife was not totally unaware of the situation. This is not a case where Roslyn was ignorant of the requirements of filing a tax return or of having her income included in the tax return filed by her husband. Nor did petitioner refuse to aid in its preparation or protest in any manner to its filing, or file her own separate income tax return for the years in issue. If the facts were otherwise, we might have had some indication that her intention was contrary to our finding. *219 We appreciate that petitioner may not have been given an opportunity to refuse to sign the tax returns and that someone else probably placed her signature on them. However, the record is barren of any evidence showing that when petitioner discovered that these returns had been filed, that she attempted to disavow her husband's actions. Neither is there evidence that she notified the respondent in any manner concerning this nor did she ever file her own separate tax return. Petitioner must be considered either to have ratified her husband's actions or at least to have acquiesced in them. Cf. Matthew L. Ladden, supra.420 Sufficiency of Respondent's Determination of Deficiencies Petitioner obliquely attacks the sufficiency of the deficiency notice, apparently on the theory that it was sparsely worded and contained insufficient detail, with the result that the notice was not one which could carry with it any presumption of correctness. This contention is without merit. "Unquestionably the burden of proof is on the taxpayer to show that the Commissioner's determination is invalid." Helvering v. Taylor, 293 U.S. 507, 515. Petitioner directs our *220 attention to Clark v. Commissioner, 266 F. 2d 698 (C.A. 9, 1959), affirming and reversing in part a Memorandum Opinion of this Court, and Cohen v. Commissioner, 266 F. 2d 5 (C.A. 9, 1959), remanding a Memorandum Opinion of this Court. In both of those cases the taxpayer had put into evidence facts from which the Court could find that respondent's determination was arbitrary and excessive. Here, however, petitioner has put in no such evidence, arguing that it is respondent's initial responsibility to show that his determination was reasonable. We do not subscribe to this argument. Clearly, the burden was on the taxpayer to present competent and relevant evidence sufficient to overcome the presumption of correctness of respondent's determination. Only if this is done does the burden of going forward shift to the respondent. Here, petitioner has failed to present any competent evidence to prove the deficiencies were erroneous. Petitioner's own unclear testimony is the only evidence in the record on this score and she shed little light on her quondam husband's true taxable income. Furthermore, petitioner was not barred from summoning the Commissioner's agent *221 to testify. Had she done so, error might or might not have been shown in respondent's determination. We do not know. The agent was not called, though the record shows he was available. Viewing the record as a whole, we have no alternative but to uphold the deficiencies determined by respondent. We note in passing that petitioner's burden was made more difficult because Sherman had died prior to the trial and a fire had destroyed his books and records. However, even in these circumstances (death of a taxpayer or the destruction of the taxpayer's records), a petitioner is not relieved of his burden. See Estate of Robert Lyons Hague, 45 B.T.A. 104, 109-110, affd. 132 F. 2d 775 (C.A. 2, 1943), certiorari denied 318 U.S. 787. Cf. Aaron Samuelson, Executor, 10 B.T.A. 860; Rhode H. Gregory, et al., 14 B.T.A. 907; J.H. McCallum, 14 B.T.A. 805. We decide the questions of whether or not the returns for 1958 and 1959 were joint returns and whether or not the deficiency notice was valid, in favor of respondent. Accordingly, it is unnecessary to discuss the alternative issues. Decisions will be entered under Rule *222 50. Footnotes
1. Sherman S. Sharwell and Roslyn Sharwell filed individual petitions with the Court. Sherman died after his petition was filed, but prior to the trial. Sherman's attorney filed a motion to withdraw from the case under Rule 24(b), Tax Court Rules of Practice.↩ This motion was granted. No appearance was made on behalf of Sherman. Apparently no administrator has been appointed for the estate, and neither arguments nor briefs have been made or filed. We dismiss the case of Sherman S. Sharwell, docket No. 2744-63, for lack of prosecution.
2. SEC. 6013. JOINT RETURNS OF INCOME TAX BY HUSBAND AND WIFE. (a) Joint Returns. - A husband and wife may make a single return jointly of income taxes under subtitle A, even though one of the spouses has neither gross income nor deductions * * * ↩
3. All statutory references are directed to the Internal Revenue Code of 1954, unless otherwise specified.↩