T.C. Memo. 2012-224

UNITED STATES TAX COURT

SHARRIFF MALIK DYER, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 25736-10.                    Filed August 6, 2012.

<u>Michelle T. Aaron</u>, for petitioner.[1]

<u>Mindy Y. Chou</u>, <u>Robert D. Heitmeyer</u>, and <u>Armand Gary Begun</u>, for

respondent.

---

[1]Petitioner appeared pro se at trial, after which Michelle T. Aaron entered her appearance in this case.

**[\*2]** MEMORANDUM FINDINGS OF FACT AND OPINION

LARO, <u>Judge</u>: Petitioner petitioned the Court pursuant to section 6213(a)[2] to redetermine respondent's determination of the following deficiencies, additions to tax, and accuracy-related penalties in respect of his 2004 through 2007 Federal income tax:

| Year | Deficiency | Addition to tax Sec. 6651(a) | Penalty Sec. 6662(a) |
|------|-----------|------------------------------|----------------------|
| 2004 | $18,023 | $4,505.75 | $3,604.60 |
| 2005 | 29,387 | 7,346.75 | 5,877.40 |
| 2006 | 30,217 | 7,554.25 | 6,043.40 |
| 2007 | 7,418 | [1]1,854.50 | 1,483.60 |

[1]Respondent's answer asserts that for 2007 petitioner is liable for a failure to file addition to tax of $18,454.50 and not $1,854.50 as determined in the notice of deficiency. We regard the increased addition to tax as a typographical error and not a newly pleaded matter because if we construed it as such, which we do not, the failure to file addition to tax for 2007 would exceed 25% of the deficiency in violation of sec. 6651(a)(1).

After the parties' concessions, as summarized in our findings of fact section, we decide the following issues: (1) whether petitioner had unreported "additional income" for 2004 through 2007. We hold he did to the extent stated herein; (2) whether petitioner is entitled to trade or business expense deductions for 2004 and

[2]Unless otherwise indicated, section references are to the applicable version of the Internal Revenue Code, and Rule references are to the Tax Court Rules of Practice and Procedure. Some dollar amounts are rounded.

[*3] 2005 in addition to those respondent has allowed.  We hold he is not; (3)

whether petitioner's filing status for 2004 through 2007 is single as claimed on his

Federal income tax returns for those years or married filing separately as determined

in the notice of deficiency.  We hold it is married filing separately; (4) whether

petitioner is liable for each year at issue for a section 6651(a)(1) addition to tax for

failure to file.  We hold he is; and (5) whether petitioner is liable for each year at

issue for a section 6662(a) accuracy-related penalty for a substantial understatement

of income tax.  We hold he is.[3]

FINDINGS OF FACT

The Court deemed certain facts and exhibits established pursuant to Rule

91(f).[4]  The parties also filed with the Court a supplemental stipulation of facts and

related exhibits.  The stipulated facts, including those deemed admitted, and the

accompanying exhibits are incorporated herein by this reference.  The stipulated

---

[3]Given our holding that there is a substantial understatement of income tax for each year at issue, we do not consider respondent's alternative position that petitioner is liable for accuracy-related penalties due to negligence or disregard of rules or regulations under sec. 6662(a) and (b)(1).

[4]We concluded that the deemed facts and exhibits were relevant to this case, and petitioner failed to show cause that the matters therein should not be admitted. See Rule 91(f).

[*4] facts are found accordingly. Petitioner has at all relevant times been married to Kristele Baker, and he was a Michigan resident when he petitioned the Court.

During the years at issue petitioner owned and operated Magnum Property Management, L.L.C. (Magnum), through which he bought, sold, rented, invested in, and managed real estate. Petitioner also worked as a self-employed mortgage broker during 2004 and 2005. Petitioner incurred various expenses in connection with his real estate and mortgage brokerage businesses, though he did not keep a formal (if any) set of books and records.

Petitioner owned at least two bank accounts during the years at issue: a personal account (personal account) and Magnum's business account (business account). The parties' redaction of substantially all the financial account numbers prevented us from more precisely describing petitioner's accounts. The record is clear, however, that petitioner used the personal account for business transactions.

Petitioner, through Magnum, sold at least two properties during the years at issue. First, he sold to Marcus Taylor for $73,000 real property in Detroit, Michigan (Parkside property) on November 22, 2006. The gross proceeds payable to Magnum from the sale of the Parkside property were reduced by, in addition to other settlement charges and closing costs, a management fee purportedly paid to Ms. Baker of $56,118.70 (purported management fee). Second, on January 12,

[*5] 2007, petitioner deposited a $94,142.52 check from LandAmerica Commonwealth Bank to the business account from the sale of real property (phantom property).

Petitioner had not filed Federal income tax returns for 2000 through 2007, and in or about October 2008, respondent selected him for a nonfiler examination.[5] After the audit began, on June 11, 2009, petitioner filed with respondent Federal income tax returns for 2004 through 2006 (2004 return, 2005 return, and 2006 return, respectively). Nearly five months later, on November 3, 2009, petitioner filed with respondent his 2007 Federal income tax return (2007 return). Each of the 2004 through 2007 returns was prepared by a paid preparer, and each reported petitioner's filing status as single. We note that Ms. Baker filed separate and apart from petitioner a Federal income tax return for each year at issue, though the record is unclear whether she claimed a filing status of single or married filing separately.

The 2004 through 2007 returns reported business income from petitioner's real estate and/or mortgage brokerage businesses of $63,225, $71,387, $77,087, and $5,197, respectively. Attached to those returns were one or more Schedules C,

---

[5]The record does not specify whether respondent determined adjustments to petitioner's 2000 through 2003 Federal income tax.

[*6] Profit or Loss From Business, reporting the following aggregated items of income and expense:

| Income | 2004 | 2005 | 2006 | 2007 |
|---|---|---|---|---|
| Gross receipts or sales | $357,129 | $612,439 | $519,424 | $10,926 |
| Costs of goods sold | 269,427 | 506,587 | 429,252 | -0- |
| Gross profit | 87,702 | 105,852 | 90,172 | 10,926 |
| Other income | -0- | -0- | -0- | -0- |
| Gross income | 87,702 | 105,852 | 90,172 | 10,926 |

| Expenses | | | | |
|---|---|---|---|---|
| Advertising | -0- | -0- | $2,000 | -0- |
| Car and truck | $6,770 | $2,415 | 2,901 | -0- |
| Office expense | 2,010 | -0- | 1,274 | -0- |
| Insurance | 1,132 | -0- | -0- | -0- |
| Legal and professional services | 484 | -0- | -0- | $2,000 |
| Rent or lease | 8,000 | -0- | -0- | -0- |
| Repairs and maintenance | 2,263 | 3,615 | -0- | 2,900 |
| Supplies | -0- | 22,325 | -0- | -0- |
| Taxes and licenses | 1,138 | 1,652 | 295 | -0- |
| Travel, meals, and entertainment | 17 | -0- | -0- | -0- |
| Utilities | 1,176 | -0- | -0- | -0- |
| Other | 1,487 | 4,458 | 6,615 | 829 |
| Total | 24,477 | 34,465 | 13,085 | 5,729 |

Attached to the 2005 return was Schedule E, Supplemental Income and Loss, for a rental property with an address described as "RESIDENTIAL". That Schedule E reported rental income of $6,111, mortgage interest expense of $6,111, and zero income. The 2006 return similarly attached Schedule E reporting rental income of $36,011, mortgage interest expense of $36,011, and zero income for property with

**[\*7]** an address described as "IRC 469(c)(A)(7)". Also attached to the 2006 return was Form 4797, Sales of Business Property, reporting the sale of a property described as "HOUSE" on August 2, 2006, for $120,000. The record is not clear whether the property reported on the Form 4797 is the same as the Parkside property.

Attached to the 2007 return were three Schedules E listing 4 rental properties on each for 12 properties in total. Three of the four Schedules E have lines drawn through them, ostensibly to show that the real estate activities reported thereon were neither taxable to nor reportable by petitioner. The 2007 return also reported that even though petitioner may or may not have owned 12 properties, he earned zero net supplemental income therefrom. The 2007 return is unreliable, and we note, for discussion purposes only, that petitioner did not report the sale of the phantom property on the 2007 return.

Respondent's revenue agent reconstructed petitioner's income for each year at issue on the basis of information included in summoned bank records and real estate closing documents.[6] Specifically, the revenue agent used the bank deposits method to reconstruct petitioner's 2004 and 2005 taxable income, and she availed herself of the specific items and bank deposits methods to reconstruct petitioner's

---

[6]Petitioner was asked to provide this information to respondent but did not.

[*8] taxable income for 2006 and 2007. The notice of deficiency attached summaries of the revenue agent's bank deposits analyses for 2004 and 2005 and referenced real estate sales as supporting respondent's "additional income" determinations. The revenue agent identified petitioner's income-producing activity as the buying and selling of properties, managing rental properties, and earning consulting fees, and she noted that petitioner did not include all income potentially taxable to him.

With regard to petitioner's 2004 and 2005 taxable years, the revenue agent compared the income reported on the 2004 and 2005 returns with petitioner's bank records for those years. After that review, she determined that petitioner had omitted from gross income deposits into the personal account (though he reported as gross income most (if not all) deposits into the business account). The revenue agent initially treated all amounts deposited into the personal account as taxable income to petitioner; but after discussions with petitioner and his representative, the revenue agent adjusted the amounts attributed to petitioner as "additional income" for interaccount transfers, equity line transfers, refinancings, and other nontaxable deposits. The revenue agent determined, in total, that petitioner had underreported his income by $59,759 for 2004 and $91,748 for 2005.

**[\*9]**  For petitioner's 2006 taxable year, the revenue agent reviewed a settlement statement relating to the sale of the Parkside property and summoned from a real estate title company.  Following an exchange with petitioner and his representative to the effect that petitioner had diverted to Ms. Baker the purported management fee, the revenue agent resolved that petitioner had underreported his 2006 income by $56,119--the proceeds from the sale of the Parkside property diverted as the management fee.  The parties stipulated that $56,119 from the sale of the Parkside property is properly attributable to petitioner.

As to petitioner's 2007 taxable year, the revenue agent reviewed petitioner's bank records and observed that approximately $94,143 had been deposited into the checking account from the sale of the phantom property but not reported on the 2007 return.  Following a meeting with petitioner, his representative, the revenue agent, and the revenue agent's manager, the revenue agent credited petitioner's basis in the phantom property as $30,000.  Wherefore, the revenue agent determined that petitioner's additional income for 2007 was increased by $64,143, allowing petitioner a $30,000 offset to the $94,143 of income deposited into the business account from the sale of the phantom property.  Because respondent does not allege an increased deficiency for 2006 from the sale of the phantom property,

**[*10]** we treat the parties as agreeing that petitioner's basis in the phantom property was $30,000.

Respondent issued to petitioner a notice of deficiency determining various adjustments to petitioner's 2004 through 2007 Federal income tax. As relevant here, respondent first increased petitioner's "additional income" for 2004 through 2007 by $59,759, $91,748, $56,119, and $64,143, respectively. Respondent next increased petitioner's "other income" for 2007 by $11,039 to reflect cancellation of indebtedness income, an adjustment respondent conceded on brief. Respondent thirdly disallowed a deduction for Schedule E mortgage interest expense for 2006 of $18,601, an adjustment respondent has since conceded. Respondent fourthly changed petitioner's filing status for 2004 through 2007 from single (as reported on the 2004 through 2007 returns) to married filing separately. Next, respondent determined for each year at issue that petitioner was liable for a section 6651 failure to file addition to tax. Respondent sixthly determined that petitioner was liable for each year at issue for an accuracy-related penalty under section 6662(a) for a substantial understatement of income tax, or alternatively, for negligence or disregard of rules or regulations. Finally, respondent determined a number of computational adjustments for itemized deductions, student loan interest expense, and exemptions.

[*11] The parties, through their various stipulations and statements on brief, have conceded and/or agreed that petitioner is not liable for certain "additional income" adjustments and that he is entitled to certain business expense deductions for 2004 through 2007, as follows:

| Item | Amount conceded | Source[1] |
|---|---|---|
| Income | | |
| 2004 Income[2] | | |
|   Additional income deposited July 13, 2004 | $8,954.54 | Stip. 17(c) |
|   Additional income deposited Oct. 18, 2004 | 2,000.00 | Stip. 17(d) |
|   Additional income deposited Dec. 31, 2004 | 371.00 | Stip. 17(e) |
|   Interaccount transfers | 1,130.00 | Ex. 39-J |
|     Total 2004 income conceded | 12,455.54 | |
| 2005 Income | | |
|   Adjustment relating to deposit on Apr. 18, 2005 | 2.00 | Stip. 17(f) |
|   Deposits removed from gross receipts | 27,880.00 | Ex. 21-J |
|     Total 2005 income conceded | 27,882.00 | |
| Deductions[3] | | |
| 2004 Deductions | | |
|   Trade or business expenses | $23,173.04 | Ex. 21-J |
|   Trade or business expenses | 5,077.94 | Ex. 39-J |
|     Total 2004 deductions conceded | 28,250.98 | |
| 2005 Deductions | | |
|   Trade or business expenses | 21,159.75 | Ex. 21-J |
|   Trade or business expenses | 3,623.87 | Ex. 39-J |
|     Total 2005 deductions conceded | 24,783.62 | |
| 2006 Deductions | | |
|   Trade or business expenses | 12,997.40 | Ex. 21-J |
|   Trade or business expenses | 10,359.33 | Ex. 39-J |
|     Total 2006 deductions conceded | 23,356.73 | |
| 2007 Deductions | | |
|   Trade or business expenses | 660.00 | Ex. 39-J |
|   Trade or business expenses | 16,858.00 | Ex. 40-J |
|     Total 2007 deductions conceded | 17,518.00 | |

[1]We include a reference to that portion of the record where the concession is found for clarity because neither party's brief accurately states the amounts not at issue.

**[\*12]**  [2]The summary of income conceded does not include respondent's acknowledgment that petitioner did not receive cancellation of indebtedness income of $11,039 for 2007.

[3]The summary of deductions conceded does not include respondent's acquiescence that petitioner is entitled to a deduction for mortgage interest expense of $18,601 for 2006.  Nor does the summary include the parties' mutual understanding that, subject to computational limitations, petitioner is entitled to deduct student loan interest for 2005 through 2007 of $3,848, $3,433, and $4,275, respectively.  We deem petitioner to have conceded that he is not entitled to a student loan interest deduction of $1,040 for 2004 because he did not raise this allegation in the petition, at trial, or in any of his other pleadings.  See Rule 34(b)(4).

OPINION

I.    Burden of Proof

The Commissioner's deficiency determinations are generally presumed correct, and the taxpayer bears the burden of proving them erroneous.  Rule 142(a)(1); Welch v. Helvering, 290 U.S. 111, 115 (1933).  However, under the jurisprudence for the U.S. Court of Appeals for the Sixth Circuit, the court to which an appeal of this case would ordinarily lie, the Commissioner bears the initial burden of producing at least a minimal evidentiary foundation linking the taxpayer to the tax-generating activity or the receipt of funds before the general presumption of correctness attaches to determinations of unreported income.  United States v. Walton, 909 F.2d 915, 919 (6th Cir. 1990); Richardson v. Commissioner, T.C. Memo. 2006-69, 91 T.C.M. (CCH) 981, 989 (2006), aff'd, 509 F.3d 736 (6th Cir. 2007).  Once the Commissioner meets his burden of production on this issue, the burden of persuasion shifts to the taxpayer to produce credible evidence that he or

[*13] she did not earn the income being charged or of proving that the Commissioner's "deficiency calculations were not grounded on a minimal evidentiary foundation." Walton, 909 F.2d at 919. The taxpayer bears the burden of proving his or her entitlement to deductions and losses, including [*13] the amount of the benefit claimed. Gatlin v. Commissioner, 754 F.2d 921, 923 (11th Cir. 1985), aff'g T.C. Memo. 1982-489; Time Ins. Co. v. Commissioner, 86 T.C. 298, 313-314 (1986).

Respondent's assessment is based in substantive evidence linking petitioner to the income-producing real estate and mortgage brokerage businesses. Included among the stipulated exhibits were 2004 and 2005 bank records for the personal account, as well as supporting deposit slips, canceled checks, cash-in and cash-out tickets, food stamp tickets, money orders, and other items. The record also includes 2007 bank statements for the business account and a supporting deposit slip and a canceled check. Though the record does not include 2006 bank records for the personal or business accounts, among the stipulated exhibits is a settlement statement and disbursement summary relating to the sale of the Parkside property-- the event giving rise to petitioner's 2006 unreported additional income. The parties stipulated that income from the sale of the Parkside property is attributable to petitioner. This documentary evidence was buttressed with the revenue agent's

**[\*14]** testimony explaining her method for calculating petitioner's unreported income for each year at issue. On the basis of the foregoing, we are satisfied that respondent has carried his burden with respect to the unreported additional income.[7]

Petitioner argues in his brief that respondent's deficiency determinations are arbitrary and capricious, excessive, or erroneous. Citing Helvering v. Taylor, 293 U.S. 507 (1935), petitioner argues that the burden of going forward thereby shifts to respondent. To support his position, petitioner directs the Court to respondent's concessions of unreported income and allowable deductions, as well as unproven allegations of misconduct by respondent's revenue agent. We decline to consider this argument. This contention was not raised at trial, in the petition, or in any of petitioner's other pleadings. Consequently, petitioner is deemed to have conceded this issue.[8] See Rule 34(b)(4); Jarvis v. Commissioner, 78 T.C. 646, 658 (1982).

---

[7]Petitioner does not contend that the burden of proof as to factual matters shifts to respondent under sec. 7491(a), nor does it, because petitioner failed to maintain all required records or cooperate with respondent's reasonable requests for information. See sec. 7491(a)(2)(A) and (B).

[8]Petitioner would not prevail under these facts in any event. The notice of deficiency was not arbitrary and capricious because it rightly identified petitioner, showed that deficiencies had been determined, stated the taxable years involved, and set forth the deficiency amounts. See Pasternak v. Commissioner, 990 F.2d 893, 897 (6th Cir. 1993), aff'g Donahue v. Commissioner, T.C. Memo. 1991-181,
(continued...)

[*15] II.      Unreported Additional Income

    A.      Overview

Respondent determined in the notice of deficiency that petitioner received "additional income" for 2004 through 2007 of $59,759, $91,748, $56,119, and $64,143, respectively.  After subtracting $12,455.54 for 2004 and $27,882 for 2005 to reflect the parties' concessions as summarized in the findings of fact, we decide whether petitioner had unreported "additional income" for 2004 through 2007 of $47,303.46, $63,866, $56,119, and $64,143, respectively.[9]  We hold he did.

Gross income is defined in section 61 as all income from whatever source derived, including in addition to other enumerated items, gross income derived from business.  Sec. 61(a)(2).  Section 6001 requires a taxpayer to keep books and

---

[8](...continued)

61 T.C.M. (CCH) 2460 (1991).  Nor was the notice of deficiency arbitrary and erroneous because it was not "utterly without foundation" but was based on the revenue agent's bank deposits and specific items analyses.  See United States v. Janis, 428 U.S. 433, 442-443 (1976).  Finally, the notice of deficiency was not excessive in the light of petitioner's noncooperation, lack of business records, and regularity of real estate activity.  See Estate of Mason v. Commissioner, 64 T.C. 651, 658 (1975) ("A petitioner cannot refuse to cooperate with the agent conducting a tax investigation and then claim that the resulting determination by the Commissioner was arbitrary when the agent acted reasonably, taking into consideration the information available to him."), aff'd, 566 F.2d 2 (6th Cir. 1977).

[9]Neither party's brief accurately states the parties' concessions with respect to the allegedly unreported income for 2004.

[*16] records sufficient to establish the taxpayer's gross income, deductions, losses, and credits. Sec. 1.6001-1(a), Income Tax Regs. Section 7602 authorizes the Commissioner to examine books, papers, records, and other data potentially relevant or material to the determination of a taxpayer's Federal income tax liability. Where an individual fails to maintain adequate books and records, the Commissioner may reconstruct the taxpayer's income using any method which, in his opinion, clearly reflects income. Sec. 446(b); see also Petzoldt v. Commissioner, 92 T.C. 661, 686-687 (1989). The reconstruction of the taxpayer's income need only be reasonable in the light of the surrounding facts and circumstances. Petzoldt v. Commissioner, 92 T.C. at 687.

Respondent reasonably reconstructed petitioner's taxable income for each year at issue. Petitioner, a habitual nonfiler for at least 2000 through 2007, failed to keep books and records from which his tax liabilities could be computed, and he refused to provide bank account or real estate sales information to respondent's revenue agent. The revenue agent collected financial and real estate sales information through third-party summonses and reconstructed petitioner's income using a combination of the bank deposits and specific items methods. Following two meetings with petitioner and his representative to determine nontaxable items

**[*17]** of income, respondent's revenue agent subsequently adjusted the additional income charged to petitioner.

Regarding petitioner's 2004 and 2005 taxable years, respondent's revenue agent used the bank deposits method to reconstruct petitioner's taxable income. The bank deposits method is an indirect proof of income reconstruction that is well established. Estate of Mason v. Commissioner, 64 T.C. 651, 656 (1975), aff'd, 566 F.2d 2 (6th Cir. 1977). The bank deposits method assumes that all cash deposited into a taxpayer's bank accounts during a specific period is gross income. Price v. United States, 335 F.2d 671, 677 (5th Cir. 1964). Bank deposits are prima facie evidence of income, Tokarski v. Commissioner, 87 T.C. 74, 77 (1986), and respondent must take into account any nontaxable sources or deductible expenses of which he has knowledge, Price, 335 F.2d at 677. The bank deposits method is not invalidated even if respondent's calculations are not entirely correct. DiLeo v. Commissioner, 96 T.C. 858, 868 (1991), aff'd, 959 F.2d 16 (2d Cir. 1992).

As to petitioner's 2006 and 2007 taxable years, respondent's revenue agent used a combination of the bank deposits and specific items methods to reconstruct petitioner's taxable income. The specific items method is a direct proof of income reconstruction this Court has approved. See, e.g., United States v. Merrick, 464 F.2d 1087, 1092 (10th Cir. 1972); Price v. Commissioner, T.C. Memo. 2004-103,

[*18] 87 T.C.M. (CCH) 1239, 1245 (2004); Levine v. Commissioner, T.C. Memo. 1998-383, 76 T.C.M. (CCH) 731, 735 (1998), aff'd without published opinion, 229 F.3d 1158 (9th Cir. 2000).  Petitioner bears the burden of proving that respondent's method of income reconstruction is unfair or inaccurate under the bank deposits method, see DiLeo v. Commissioner, 96 T.C. at 859, and under the specific deposits method, see Levine v. Commissioner, 76 T.C.M. (CCH) at 735.  To carry his burden, petitioner must offer "'competent and relevant evidence from which it could be found that he did not receive the income alleged in the deficiency notice.'"  See Sharwell v. Commissioner, 419 F.2d 1057, 1060 (6th Cir. 1969) (quoting Foster v. Commissioner, 391 F.2d 727, 735 (4th Cir. 1968), aff'g in part, rev'g in part T.C. Memo. 1965-246, 24 T.C.M. (CCH) 1268 (1965)), vacating T.C. Memo. 1968-89, 27 T.C.M. (CCH) 416 (1968).  Petitioner presented no evidence at trial concerning respondent's unreported income determinations, though he argues on brief that he is entitled to additional income adjustments for 2004 through 2007.  We consider petitioner's arguments in turn.[10]

First, petitioner claims that respondent wrongly credited him with income deposited into the personal account but withdrawn on the same day for payment of

---

[10]We do not consider petitioner's claim that respondent erred by including in income a check for $8,954.54 payable to Ms. Baker because the Court has deemed stipulated that this income was not taxable to petitioner.

**[\*19]** expenses. This argument is meritless. Gross income encompasses all undeniable accessions of wealth, clearly realized, and over which a taxpayer has complete dominion and control. Commissioner v. Glenshaw Glass Co., 348 U.S. 426, 431 (1955). Petitioner does not dispute that he received the income deposited into the personal account. He acquired dominion and control over those funds as shown by the fact that he used those moneys for the payment of expenses. Thus, deposits into the personal account and withdrawn to pay expenses are taxable to petitioner.

Second, petitioner claims that respondent incorrectly included as "additional income" for 2006 the proceeds from the sales of the Parkside property because, as petitioner contends, the 2006 return already reported those proceeds. The record does not support petitioner's position. Petitioner presented no evidence on, nor did he testify with respect to, the sale of the Parkside property. The Form 4797 attached to the 2006 return merely describes the sale of a property described as "HOUSE". Petitioner provided no credible evidence to suggest that the Parkside property was the "HOUSE" described on the Form 4797. Petitioner has failed to persuade us that the proceeds from the sale of the Parkside property were reported on the 2006 return, and accordingly, such amounts are taxable to him.

**[\*20]** Third, petitioner claims that respondent erroneously treated as "additional income" $5,638.77 payable to Mr. Taylor and deposited into petitioner's bank account. We are not persuaded. On November 22, 2006, Mr. Taylor purchased from Magnum the Parkside property, and we think it probable to conclude that those funds related to the purchase of that property. Petitioner has not persuaded us otherwise, and we conclude amounts from Mr. Taylor are taxable to him.

We conclude that the specific items and bank deposits methods respondent used to reconstruct petitioner's income were reasonable and substantially accurate. Any inaccuracies in the income reconstruction which petitioner believes to have not been addressed through respondent's concessions are wholly attributable to his failure to keep books and records and his failure to cooperate with respondent's revenue agent during the audit. Thus, we sustain respondent's determinations (after concessions) that petitioner received "additional income" for 2004 through 2007 of $47,303.46, $63,866, $56,119, and $64,143, respectively.

III. Trade or Business Expense Deductions

Petitioner claimed, and respondent did not disallow, deductions for trade or business expenses of $24,477, $34,465, $13,085, and $5,729 on the 2004 through 2007 returns, respectively. Respondent, though he does not accurately summarize

**[*21]** his concessions on brief,[11] conceded additional deductions for trade or business expenses of $28,250.98, $24,783.62, $23,356.73, and $17,518 for 2004 through 2007, respectively. Petitioner asserts he is entitled to additional trade or business expense deductions for car and truck expenses of $7,243 for 2004 and $10,987 for 2007. We disagree.

Section 162 sets forth the general rule that a taxpayer is allowed a deduction for all ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business. Section 262, by contrast, generally disallows a deduction for personal, living, or family expenses. Section 274(d) imposes strict substantiation requirements for expenses related to listed property, including, but not limited to, passenger automobiles. See sec. 280F(d)(4)(A)(i). For expenses relating to automobiles, a taxpayer must substantiate with adequate records: (1) the amount of each separate expense; (2) the mileage for each business use of the automobile and the total mileage for all purposes during the taxable period; (3) the date of the business use; and (4) the business purpose of the use. See sec. 1.274-

---

[11]Respondent claims on brief that petitioner is entitled to additional trade or business expense deductions for 2004 through 2007 of $19,455.98, $26,435.62, $32,980.73, and $12,618, respectively. We treat respondent's statements on brief as computational errors and not binding concessions because we consider specific items to be concessions but not summary totals. Cf. Balot v. Commissioner, T.C. Memo. 2001-73, 81 T.C.M. (CCH) 1409, 1410 n.2 (2001) (treating statements on brief as a clerical error and not an attempt to withdraw part of a concession).

**[*22]** 5T(b)(6), Temporary Income Tax Regs., 50 Fed. Reg. 46016 (Nov. 6, 1985).

In the absence of adequate records, such as an account book, a diary, a log, a

statement of expenses, trip sheets, or a similar record, a taxpayer may substantiate

expenses for mileage with sufficiently detailed written or oral statements and other

collateral evidence establishing that the expense was incurred.  See sec. 1.274-

5T(c)(2), (3)(i), Temporary Income Tax Regs., 50 Fed. Reg. 46020 (Nov. 6, 1985).

Petitioner testified that he used his Mercedes-Benz and his Range Rover for

business and personal use throughout 2004 and 2005, and more specifically, that he

drove around 37,000 and 33,000 miles for business purposes in each respective year.

This testimony was not corroborated with a contemporaneous driving log or any

other document which establishes the amount of miles driven, the mileage for each

purported business use of the vehicle, the date on which the trips allegedly occurred,

or a specific business purpose of the trip.[12]  As support for his testimony, which we

found to be vague and self-severing, petitioner offered daily planners for 2004 and

2005.

Although we do not doubt that petitioner used his vehicles in 2004 and 2005

for business purposes, we decline to grant him deductions for car and truck

---

[12]Petitioner attempted to introduce, and the Court did not admit, a summary of expenses recreated a "few days" before trial which he allegedly incurred.  The Court declined to admit the summary as unreliable and inadmissible hearsay.

**[*23]** expenses over and above those respondent has already allowed. Petitioner's daily planners do not qualify as "adequate records" under section 274(d) because they contain no geographic information from which the total number of miles he drove can be determined. Nor do the daily planners, which include many personal appointments, establish the business use of the vehicles. Moreover, petitioner was not able to explain how many total miles he drove in 2004 and 2005 or how many personal miles he drove. As a whole, petitioner's testimony was not detailed or specific enough to satisfy the strict requirements of section 274(d). Whereas petitioner urges the Court to apply the Cohan rule to estimate his mileage for 2004 and 2005, we may not because the substantiation requirements of section 274(d) supersede the rule in Cohan. See Sanford v. Commissioner, 50 T.C. 823, 827 (1968), aff'd, 412 F.2d 201 (2d Cir. 1969). Thus, we hold that petitioner may not deduct additional trade or business expenses over and above those respondent has already allowed.

IV.   Filing Status

Petitioner filed his 2004 through 2007 Federal income tax returns claiming single filing status. Respondent determined that petitioner's filing status for each year at issue was married filing separately. Petitioner did not address this issue at trial or in his posttrial brief, and we will sustain respondent's determination.

[*24] Section 1 imposes a Federal income tax on individuals at progressive rates that are determined by reference to the taxpayer's taxable income and filing status. Compare sec. 1(c) (rates for unmarried individuals other than surviving spouses and heads of household), with sec. 1(b) (rates for married individuals filing joint returns and surviving spouses) and sec. 1(d) (rates for married individuals filing separate returns). For Federal income tax purposes, an individual's marital status is determined at the close of the taxable year. Sec. 7703(a)(1). A married individual may nonetheless be considered unmarried for Federal income tax purposes where the following four-part test is met: (1) the individual files a separate return; (2) the individual, for more than one-half of the taxable year, maintains as his or her home a household that serves as the principal place or abode of a child who is the individual's tax dependent; (3) the individual furnishes more than one-half of the cost of maintaining such household during the taxable year; and (4) the spouse was not a member of the household during the last six months of the taxable year. Sec. 7703(b)(1). These requirements are in the conjunctive; each element must be met before a married individual will be treated as unmarried for Federal income tax purposes.

Although petitioner and Ms. Baker filed separate Federal income tax returns for each year at issue, we are not persuaded that petitioner meets any of the second

**[\*25]** through fourth requirements. Petitioner introduced no evidence as to whether he supports a household that serves as the domicile of his tax-dependent child, and certainly, the fact that the 2004 through 2007 returns do not claim a dependent as an exemption undermines any finding that petitioner paid more than one-half of the cost of maintaining such a household. Nor did petitioner offer any evidence to suggest that he and Ms. Baker were not members of the same household during the last six months of any year at issue. The record establishes that petitioner and Ms. Baker were legally married during each of the years 2004 through 2007, and we accordingly hold that petitioner's filing status for each of those years is married filing separately.

V.    Additions to Tax

Respondent determined for each year at issue that petitioner is liable for an addition to tax for failure to timely file under section 6651(a)(1). That section imposes an addition to tax for failing to file a required return on or before the specified filing date unless the failure is due to reasonable cause and not willful neglect. Pursuant to section 7491(c), respondent bears the initial burden of producing evidence that imposition of the addition to tax is appropriate. See also Higbee v. Commissioner, 116 T.C. 438, 446-447 (2001). Once respondent meets his burden of production the burden of persuasion shifts to petitioner to establish

**[\*26]** that the failure to file was due to reasonable cause and not willful neglect. Id. at 447. Respondent carried his burden of production by introducing copies of the 2004 through 2007 returns, each of which was filed late. The petition includes no allegations regarding the addition to tax for failure to timely file, and petitioner did not address this issue at trial or in his posttrial brief. As a result, we deem petitioner to have conceded his liability for the section 6651(a)(1) addition to tax for each year at issue. See Rules 34(b)(4), 151(e)(4) and (5). Consequently, we hold that petitioner is liable for additions to tax under section 6651(a)(1) for each year at issue with the amount of those additions to tax to be determined by the parties in their Rule 155 computations.

VI.     Accuracy-Related Penalties

Respondent determined for each year at issue that petitioner is liable for an accuracy-related penalty because of a substantial understatement of income tax or, alternatively, for negligence or disregard of rules or regulations. See sec. 6662(a) and (b)(1) and (2). Only one accuracy-related penalty applies to a given portion of an underpayment even where that portion resulted from more than one of the types of misconduct described in section 6662. Sec. 1.6662-2(c), Income Tax Regs. We focus our inquiry on whether there was a substantial understatement of income tax for each year at issue. A substantial understatement of income tax exists for any

**[*27]** year in which the amount of the understatement exceeds the greater of 10% of the tax required to be shown on the return or $5,000. Sec. 6662(d)(1)(A).

Under section 7491(c), respondent must produce sufficient evidence that it is appropriate to impose the accuracy-related penalties against petitioner. See also Higbee v. Commissioner, 116 T.C. at 446-447. Once respondent meets his burden of production, however, petitioner bears the burden of proving that the penalties do not apply because of reasonable cause, substantial authority, or other comparable affirmative defenses. See id. at 446-447. Respondent meets his burden by showing that petitioner's omission of income from his real estate and mortgage brokering businesses resulted in an understatement of income tax for each year at issue in an amount of more than $5,000 and more than 10% of the tax required to be shown on the return. See Park v. Commissioner, 136 T.C. 569, 583 (2011) (the Commissioner met his burden of production by showing that the failure to report income resulted in understatements of income tax for each year at issue by more than $5,000 and more than 10% of the tax required to be shown on the return).

Petitioner argues that the accuracy-related penalties do not apply because he meets the reasonable cause defense of section 6664(c)(1). Under that section, the accuracy-related penalties do not apply to any portion of an underpayment of tax for which petitioner proves that he had reasonable cause and acted in good faith.

**[\*28]** Whether petitioner acted with reasonable cause is a factual determination in which petitioner's efforts to assess the proper tax liability is of critical importance. See sec. 1.6664-4(b)(1), Income Tax Regs. We conclude that petitioner does not meet the reasonable cause defense of section 6664.

Construing petitioner's statement on brief that he hired a tax return preparer to prepare the 2004 through 2007 returns to mean that he relied on the advice of one or more tax professionals,[13] we conclude that petitioner did not establish that the accuracy-related penalties should not apply. Reliance on a tax professional's advice may establish reasonable cause and good faith if petitioner proves by a preponderance of the evidence that: (1) the adviser was a competent professional with sufficient expertise to justify reliance; (2) the taxpayer provided the adviser with necessary and accurate information; and (3) the taxpayer actually relied in good faith on the adviser's judgment. Neonatology Assocs., P.A. v. Commissioner, 115 T.C. 43, 99 (2000), aff'd, 299 F.3d 221 (3d Cir. 2002).

---

[13]Petitioner states in his posttrial brief that he hired a return preparer to prepare his returns for three years at issue, but the record establishes that he hired one or more return preparers to prepare each of the 2004 through 2007 returns. We note that the record is unclear with respect to which three years petitioner believes he hired a tax professional because he references the 2005 taxable year twice and the copy of the 2004 return deemed stipulated lists the preparer tax identification number (i.e., PTIN) but not his or her name or firm.

**[\*29]** On the basis of the record at hand, we decline to conclude that any of these requirements have been met. Petitioner introduced no evidence about the return preparer(s) he hired and he did not call such individual(s) to testify on his behalf. Petitioner does not assert, and the record does not establish , that he provided the return preparer(s) with necessary and accurate information. Nor has he proven that he actually relied upon the adviser's judgment in good faith. This failure of proof is borne by petitioner.

Petitioner's efforts (if any) to determine his proper tax liabilities also do not satisfy the reasonable cause defense. Petitioner was a chronic nonfiler who filed the 2004 through 2007 returns only after being contacted by the IRS. Each of those returns reported petitioner's filing status as single even though he was in fact married to Ms. Baker. Petitioner maintained no books and records from which his Federal income tax liabilities could be calculated. Accordingly, we conclude that petitioner does not meet the reasonable cause defense of section 6664(c)(1). It follows that the accuracy-related penalties determined by respondent are applicable to the extent stated herein.

The Court has considered all arguments for a contrary result and, to the extent not discussed herein, we conclude those arguments are irrelevant, moot, or without merit.

[*30] To reflect the parties' concessions and to give effect to the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155</u>.