T.C. Memo. 2015-211

UNITED STATES TAX COURT

RONALD LAWSON AND KAREN BEY, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 15600-14.                        Filed October 28, 2015.

Ronald Lawson and Karen Bey, pro se.

<u>Marissa J. Savit</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

LARO, <u>Judge</u>:  Petitioners, Ronald Lawson (Mr. Lawson) and Karen Bey

(Dr. Bey), petitioned this Court to redetermine respondent's determinations in the

notice of deficiency issued on April 3, 2014, for the 2011 and 2012 tax years

(years at issue).  The deficiency amounts are $14,315 for tax year 2011 and

[*2] $16,049 for tax year 2012 as well as an addition to tax under section

6651(a)(1)[1] for 2012. Respondent amended his answer and asserted accuracy-

related penalties under section 6662(a) for the years at issue, with the amounts to

be determined at a later date in Rule 155 computations.

The issues for decision are:

(1) whether petitioners are entitled to deductions claimed on Schedules C,

Profit or Loss From Business (Sole Proprietorship), for car and truck expenses of

$26,005 and $9,990 for the respective years at issue. We hold that they are not;

(2) whether petitioners are entitled to deductions claimed on Schedules E,

Supplemental Income and Loss, for repair expenses of $32,450 and $20,255 for

the respective years at issue. We hold that they are not;

(3) whether petitioners have unreported Schedule C and/or Schedule E gross

receipts or sales of $18,057 and $22,101 for the respective years at issue. We hold

that they do to the extent stated in this opinion;

(4) whether petitioners failed to report taxable income of $31,130 from a

settlement for the 2012 tax year. We hold that they did;

---

[1]All section references are to the Internal Revenue Code (Code) in effect for the years at issue, and Rule references are to the Tax Court Rules of Practice and Procedure.

**[\*3]**  (5) whether petitioners are liable for an addition to tax under section 6651(a)(1) for failure to file timely for the 2012 taxable year.  We hold that they are; and

(6) whether petitioners are liable for accuracy-related penalties under section 6662(a) for the years at issue.  We hold that they are.

## FINDINGS OF FACT

The facts set forth below are based on the pleadings, witness testimony during the trial, and other pertinent materials of the record.  Some of the facts have been stipulated.  The stipulations of facts and the facts drawn from the stipulated exhibits are incorporated herein, and we find those facts accordingly.  Petitioners were married at all relevant times and resided in the State of New York at the time they filed their petition on July 3, 2014.  Absent a stipulation to the contrary, an appeal of this case would lie in the Court of Appeals for the Second Circuit.

During the years at issue Dr. Bey operated a holistic wellness business and Mr. Lawson was an employee of Quality Building Services Corp. (QBS).  Petitioners timely filed their 2011 Form 1040, U.S. Individual Income Tax Return (2011 tax return).  Petitioners filed their 2012 Form 1040 (2012 tax return) on April 28, 2013, after the filing deadline.  Respondent's revenue agent Gene Enriquez (RA Enriquez) examined petitioners' 2011 and 2012 tax returns.  In the

[*4] course of the audit, RA Enriquez requested that petitioners produce their business records, bank account statements, and substantiating documentation for the expenses underlying the claimed deductions. Petitioners did not provide RA Enriquez with the requested information. Instead, petitioners claim RA Enriquez should have "availed himself" of the access to petitioners' computer files containing their business records during RA Enriquez's two site visits to Dr. Bey's offices.

On April 3, 2014, respondent issued a notice of deficiency to petitioners for the years at issue. Respondent disallowed certain deductions that petitioners claimed on Schedules C and E of the 2011 and 2012 tax returns. In addition, on the basis of the bank deposits analysis (BDA) performed during the audit and petitioners' failure to include in income proceeds received as a result of a settlement with Bank of America Corp. (BOA), respondent determined that petitioners had unreported income.

I.    Schedule C Car and Truck Expenses

Petitioners claimed deductions of $26,005 and $9,990 for business-related car and truck expenses on Schedules C of the 2011 and 2012 tax returns, respectively. Dr. Bey explained that she used the cars to visit her clients at their homes. However, she did not provide the Court with any documentation

[*5] supporting the expenses underlying the deductions claimed on Schedules C for the years at issue.[2] During one of RA Enriquez's site visits, Dr. Bey claimed that all the records related to the car and truck expenses are stored on her computer. RA Enriquez asked petitioners to email him the relevant documents, but petitioners neither did that nor provided the documents in any other form.

## II.    Schedule E Repair Expenses

Dr. Bey was involved in the distressed real estate business for a number of years. In 2011 petitioners' tax return reported five rental properties on their Schedule E:  151 Hawthorne Avenue (Hawthorne property); 30 Ashburton Road (Ashburton property); 8 Larter Avenue (Larter property); 11 West 184th Street; and 832 Palisade Avenue (Palisade property).

On their 2011 tax return petitioners claimed a Schedule E repair expense deduction of $32,450, including $2,000 and $3,250 for the Ashburton property and the Palisade property, respectively.

---

[2]Schedule C attached to the 2011 tax return was in the name of Mr. Lawson. However, on the basis of the testimonies of Mr. Lawson and Dr. Bey at trial, as well as the employee identification number used on Schedules C for the years at issue, we find that the expenses reported on Schedule C attached to the 2011 tax return are attributable to the business of Dr. Bey.

**[*6]**  On Schedule E in the 2012 tax return petitioners reported having only one rental property, the Larter property, and claimed a repair expense deduction of $20,255.

During 2011 and 2012 petitioners resided at both the Ashburton and the Palisade properties.  Dr. Bey had business offices at the Hawthorne and the Palisade properties.

After the audit respondent disallowed all repair expense deductions claimed on Schedules E for the years at issue.  Petitioners did not keep records substantiating the repair expenses and attempted to claim deductions for repair expenses for the properties they resided at--the Ashburton and Palisade properties. Petitioners explained that some of the repair expenses were reimbursed by insurance or third-party payments.

III.    BDA and Unreported Income

Dr. Bey informed RA Enriquez during the audit that she received mainly cash from her clients, which she deposited in part and retained in part.  Because petitioners did not provide RA Enriquez with their business records and bank statements when requested, RA Enriquez had to subpoena petitioners' bank account statements.  RA Enriquez then prepared a BDA to enable him to verify the correctness of petitioners' reported gross receipts.

**[\*7]**  During the years at issue petitioners had at least five bank accounts:  Chase 5403; Chase 5679; New York Commercial Bank (NYCB); Citibank 8771 (Citi 8771); and Citibank 8435 (Citi 8435).  Petitioners admitted that they used their personal bank accounts for business purposes.

When RA Enriquez completed the BDA, petitioners had an opportunity to dispute or offer alternative explanations to RA Enriquez's findings.  Petitioners chose not to pursue this option.

A BDA is not a perfect tool, and there were some issues as to the correctness of RA Enriquez's conclusions.  Respondent admitted that RA Enriquez's BDA improperly excluded Mr. Lawson's gross wages instead of excluding the net wages.  Respondent's Technical Services Unit caught this error and corrected it before issuing the notice of deficiency to petitioners.

This, however, was not the only problem with RA Enriquez's BDA. Respondent later conceded that two deposits made during March 2012 to petitioners' Citi 8435 account for $2,000 and $2,025 were improperly included in the BDA.

[*8]   Other issues with RA Enriquez's BDA are discussed below.

A.      Wages and Deposits Previously Omitted From the BDA

Respondent's amended pretrial memorandum notified the Court and petitioners that wages that QBS paid to Mr. Lawson were excluded from the BDA both at the individual bank account level and at the end of the analysis when total annual net wages were excluded from the BDA.  Our review of the record shows that the following deposits in 2012 were affected by this error:

| Date | Amount | Exhibit No. | Payor |
|------|--------|-------------|-------|
| 9/27 | $823.58 | 33-R at 0093 | QBS |
| 10/22 | 1,011.82 | 33-R at 0103 | QBS |
| 11/15 | 913.04 | 33-R at 0105 | QBS |
| 11/21 | 684.22 | 33-R at 0105 | QBS |
| 11/29 | 624.50 | 33-R at 0105 | QBS |
| 12/6 | 793.35 | 33-R at 0105 | QBS |
| 12/13 | 883.23 | 33-R at 0111 | QBS |
| 12/20 | 644.42 | 33-R at 0111 | QBS |

In addition, we find that the deposit made on December 27, 2012, of $863.35 should be treated as wages.  Respondent should address the treatment of this

**[*9]** deposit in the Rule 155 computations. All of the affected deposits were made in Mr. Lawson's Chase 5679 account.

In addition, respondent requested the Court to allow in the Rule 155 computations a check for $550 deposited into the NYCB account in March 2012 that respondent failed to address in the original BDA. Petitioners did not provide any testimony or other evidence as to why the check should not be included.

B.     Unreported Rent

On the basis of the BDA, respondent concluded that petitioners received rent from Tiasha Wamack of $1,150 per month for the Hawthorne property in 2012. Respondent alleges that the total unreported rent was at least $5,300 for the 2012 tax year. Petitioners should have reported the rent on Schedule E but failed to do so or to otherwise report the Hawthorne property on Schedule E for 2012 tax year. On briefs petitioners pointed out that one of the checks from Tiasha Wamack deposited in June 2012 for $1,150 was returned for insufficient funds. Petitioners did not present any other evidence refuting respondent's conclusions.

C.     Security Deposits

Dr. Bey identified checks and bank deposits that she claims are security deposits for various rental properties. Dr. Bey's explanation is inconsistent with the notes on some of the checks. Specifically, a check for $1,800 made payable to

[*10] Dr. Bey from Carolina Cobena dated January 4, 2011, has a note on it stating the check is for rent from January 4 to February 4, 2011. Another check for $2,300 made payable to Dr. Bey from Tiasha Wamack dated November 23, 2011, is notated as "Security +1st Month Dec. Rent" for the Hawthorne property. Dr. Bey testified that two postal money orders from Rafael Martinez of $1,000 and $400 represent a security deposit for the Larter property, but there are no notations on the money orders or any other documents clarifying the purpose of the money orders. The record is silent as to whether petitioners ever returned these or other alleged security deposits or whether the deposits were used to cover any damage to the respective rental properties.

D.      Transfers to Other Accounts of Petitioners and Between Petitioners

Further, Dr. Bey identified checks that she issued to herself to transfer money from her NYCB account to her other accounts for convenience. Respondent pointed out that some of these checks had a different name of issuer than that of Dr. Bey. Dr. Bey explained that she uses various names, including Karen Bey, K. Bey, Shya Bey, Shakema Bey, and Karema Bey because of the differences in her birth and ordained names. Respondent maintains on the basis of notations on some of the checks as rent or for the Larter property that Shya K. Bey was petitioners' tenant. However, a review of the evidence submitted by the

[*11] parties, including statements for the Citi 8771 and NYCB accounts, shows that checks issued by "Dr Shya K Bey" or "Dr K Bey" were issued from the NYCB account that belongs to Dr. Bey. The numbers on the checks and the amounts deposited to the Citi 8771 account are the same as the check numbers and amounts showing on the NYCB statements. Thus, we find that these checks were indeed checks issued by Dr. Bey to herself.[3]

On briefs petitioners identified a number of checks they issued to each other. RA Enriquez properly identified and excluded some of these checks from the BDA, including the check from Mr. Lawson to Dr. Bey for $29,000 as a loan. However, RA Enriquez did not exclude from the BDA a number of checks issued by Dr. Shya K. Bey to Mr. Lawson and deposited in the Chase 5679 account. As discussed above, the amounts and numbers on the checks are the same as the

---

[3]The exhibits showing the affected checks are as follows: Exh. 31-R, at Bates Nos. 0033 ($900), 0035 ($1,150), 0039 ($1,256), 0041 ($1,680), 0044 ($2,175), 0046 ($2,174.40), 0052 ($2,350, returned for insufficient funds), 0055 ($2,850), 0063 ($1,895, returned for insufficient funds), and 0071 ($1,950). Corresponding writeoffs from the NYCB account, including check numbers, are included on various pages of Exh. 25-R. All other checks that petitioners identified as issued to themselves are properly included in the BDA.

[*12] amounts and numbers of checks reported on Dr. Bey's NYCB account statements.  Thus, we find that these checks were issued by Dr. Bey to Mr. Lawson.[4]

E.     Checks Returned for Insufficient Funds

Petitioners identified on briefs several deposited checks that should have been excluded by RA Enriquez from the BDA because they were returned for insufficient funds.  Some of these checks have been identified and excluded by RA Enriquez.  In addition to those checks, our review of the evidence submitted by the parties shows that the following checks that petitioner identified are listed on the corresponding 2012 bank statements as returned for insufficient funds:

| Account | Amount | Bates No. |
| --- | --- | --- |
| Citi 8435 | $1,150.00 | 0017 |
| | 90.00 | 0040 |
| | 340.00 | 0044 |
| | 2,200.00 | 0090 |
| Chase 5679 | [1]19,079.41 | 0112, 0118, 0119 |

[1]This alleged insurance payment for petitioners' Porsche Cayenne was returned for insufficient funds.

---

[4]Exhibits showing the affected checks are as follows:  Exh. 33-R at Bates Nos. 033 ($600), 0035 ($825), 0037 ($1,950), 0039 ($1,300), 0041 ($850), and 0022 ($700).  Other checks that petitioners identified as issued to each other are properly included in the BDA.

[*13] F.  Federal and State Tax Refunds

Petitioners claim that RA Enriquez did not exclude from the BDA deposits representing State and Federal tax refunds that petitioners received in 2011 and 2012.  This statement is true only with respect to one check from the U.S. Treasury of $5,832.13 deposited in the Chase 5403 account on July 24, 2012.  RA Ramirez excluded from the BDA other checks representing State and Federal tax refunds.[5]

G.  Miscellaneous Deposits

Petitioners identified on briefs some checks received as loans,[6] checks cashed in accommodation to out-of-State relations,[7] and funds received from offsetting accounts.[8]  The record does not have any further substantiation for such items.

---

[5]We do not opine on whether RA Ramirez's treatment of State tax refunds as nontaxable is correct because the parties did not raise this issue in their pleadings.  This issue is thus deemed waived.

[6]Exh. 36-R at Bates Nos. 0046 and 0056.  Another check identified as a loan, Exh. 36-R at Bates No. 0040, was returned for insufficient funds.

[7]Exh. 36-R at Bates Nos. 0113, 0030, 0031, 0032, and 0033.

[8]Exh. 36-R at Bates Nos. 0028, 0029, and 0110.

**[\*14]** H.    Alleged Insurance and Damage to the Property Proceeds

Petitioners claim that RA Enriquez should have excluded some of the deposits from his BDA because the deposits represent payments received from escrow or as property damage insurance proceeds.

Checks documenting some of the alleged insurance payments for damages to petitioners' real property were sometimes not issued in the names of petitioners but were nevertheless deposited into their accounts.[9]  When questioned regarding the other names on the alleged insurance checks, Dr. Bey explained that they were the original mortgage holders on the properties.  Petitioners did not provide any documentation relating to these insurance policies, such as contracts or correspondence evidencing existence of the policies.  There are no agreements on the record between petitioners and the original mortgage holders documenting allocation of insurance expenses and proceeds.

---

[9]The checks Dr. Bey identified during the trial as insurance payments are: Exh. 31-R, Bates 0016, for $5,484.25 payable to K Bey & Co. (no payment description on the check; petitioners claim this was an insurance payment for the Palisade Property); Exh. 31-R, Bates 0022 and 0025, for $1,072.80 and $1,072.79, respectively, payable to Dr K Bey & Co., Juliana & Gregory Jean (payment description on the check is "for payment of restricted escrow"; petitioners claim it is for the insurance on one of the properties); Exh. 31-R, Bates 0048, for $4,849.51 payable to K Bey and Co., Angelina Schwickrath (petitioners claim it was an insurance payment for the Palisade property; the check refers to a loan number).

[*15] Petitioners also failed to provide any evidence of the alleged damages to the respective properties. Dr. Bey explained that to get the insurance payments, she usually had to do the repairs first, take photographs of the repairs done, and send the photographs to the insurance company or a bank. Only after doing those things would she be reimbursed for the expenses. Petitioners failed to introduce into evidence any documentation in support of the alleged insurance payments.

On briefs petitioners identified additional insurance proceeds as follows: Exhibit 27-R, Bates 0027 (void escrow check already excluded from the BDA) and Exhibit 36-R, Bates 0058 and 0067 (checks for $4,749.28 and $4,155, respectively, issued by Castle Point Insurance Co. for a claim number ending in 77-01). Again, there is no evidence on the record that would further explain the nature of the payments.

In 2012 petitioners received an insurance payment from Allstate for a damaged Porsche Cayenne that they owned. Allstate issued three checks in the same amount and for the same loss but sent the checks to three different addresses. Two of the checks were returned for insufficient funds after petitioners attempted to deposit them. One of the checks, however, was deposited successfully in the Citi 8435 account. RA Enriquez excluded from the BDA two of the checks (likely as returned for insufficient funds) but did not do the same for the third check.

**[*16]** IV.   <u>Unreported Income From Settlement With BOA</u>

In 2011 Mr. Lawson filed a complaint in the Supreme Court of the State of New York, County of Westchester, against Samba Gassama, Gassama Enterprises Corp. (collectively, Gassama), and BOA.  The complaint alleged that Gassama stole six checks totaling $50,000 from Mr. Lawson and fraudulently deposited them into Gassama's accounts.  Mr. Lawson alleged that BOA acted negligently in transferring funds out of Mr. Lawson's BOA account.  BOA denied any wrongdoing.

At the end of 2011 Mr. Lawson filed another complaint in the Supreme Court of the State of New York, County of Westchester, against Anthony Philips and BOA.  The second complaint alleged that Mr. Lawson deposited into his BOA account a check for $18,020.33 that was issued by Liberty Mutual Insurance Co. to Mr. Lawson and Anthony Philips and endorsed by both of them.  The complaint alleged that the check represented the payment for Mr. Lawson's services for renovating Anthony Philips' real property.  Subsequently, BOA transferred the funds to Anthony Philips upon his request after it received an affidavit of forged signature.  Mr. Lawson argued that BOA breached its fiduciary duty to him and acted negligently in transferring funds out of his account.  BOA denied any wrongdoing.

**[\*17]** After several months of negotiations Mr. Lawson and BOA reached a settlement in both cases. Mr. Lawson executed a general release for both complaints as to BOA, and the parties filed stipulations of discontinuance with prejudice as to defendant BOA only. As a result of the settlement, on July 26, 2012, Mr. Lawson's attorney issued a check to Mr. Lawson for $31,130, representing the $40,000 received from BOA, less legal fees and court costs.

RA Enriquez identified the check as settlement proceeds in the BDA but did not exclude it as nontaxable. Later, petitioners admitted that they received settlement proceeds of $31,130 in 2012.[10]

OPINION

I. Burden of Proof

The Commissioner's determinations in a notice of deficiency are generally presumed to be correct, and the taxpayer bears the burden of proving by a preponderance of the evidence that the determinations are incorrect. Sec. 7482(b)(1)(A); Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Pursuant to section 7491(a)(1), the burden of proof may shift to the Commissioner

---

[10]The request for admissions labeled the proceeds an "insurance settlement", but the parties later identified the proceeds in their briefs as proceeds from a settlement with BOA. We do not opine on whether it was appropriate to include in petitioners' income the full amount of the settlement, $40,000. Respondent did not raise this argument in his pleadings, and we thus deem it waived.

**[*18]** with respect to factual matters if the taxpayer meets certain requirements. For the burden to shift, the taxpayer must (1) comply with the substantiation requirements as provided in the Code; (2) maintain records as required under the Code; and (3) cooperate with reasonable requests by the Commissioner for witnesses, information, documents, meetings, and interviews. Sec. 7491(a)(2).

Petitioners argue in their posttrial briefs that the burden of proof should shift to respondent pursuant to section 7491(a). However, petitioners did not comply with respondent's information requests and discovery deadlines, failed to provide the requested documents from their computer, and, as discussed more thoroughly below, did not meet the substantiation requirements regarding their alleged expenses. Thus, petitioners did not satisfy the requirements for the burden to shift under section 7491(a).

II.    Deductions/Expenses

Deductions are a matter of legislative grace, and the taxpayer bears the burden of proving his entitlement to any deductions claimed. INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); Deputy v. du Pont, 308 U.S. 488, 493 (1940); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934); Welch v. Helvering, 290 U.S. at 115. A taxpayer is required to maintain sufficient records to substantiate expenses underlying the deductions claimed on Federal income tax

[*19] returns.  Sec. 6001; sec. 1.6001-1(a), (e), Income Tax Regs.; see also

Hradesky v. Commissioner, 65 T.C. 87, 90 (1976), aff'd, 540 F.2d 821 (5th Cir.

1976).

A.    Deductibility of Schedule C Car and Truck Expenses

Petitioners claimed deductions for car and truck expenses of $26,005 and

$9,990 for the respective years at issue.  Respondent denied these deductions in

their entirety because petitioners failed to substantiate the expenses.

Section 162 allows a deduction for all ordinary and necessary expenses paid

or incurred during the tax year in carrying on any trade or business.  Section

274(d) precludes a deduction for specified expenses unless a taxpayer

substantiates by adequate records or by sufficient evidence corroborating the

taxpayer's own statement the following five elements:  the amount, date, time,

place, and business purpose of the expense.  To meet the adequate records

requirement for the expenses enumerated in section 274, a taxpayer must maintain

an account book, a diary, a log, a statement of expense, trip sheets, or a similar

record and documentary evidence which, in combination, would be sufficient to

establish each element of expenditure or use.  Sec. 1.274-5T(c)(2)(ii)(A),

Temporary Income Tax Regs., 50 Fed. Reg. 46017 (Nov. 6, 1985).  Section 274

and section 1.274-5T, Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6,

[*20] 1985), provide heightened substantiation requirements for any listed property under section 280F(d)(4). Listed property under section 280F(d)(4) includes any passenger automobile. Colvin v. Commissioner, T.C. Memo. 2007-157, aff'd, 285 F. App'x 157 (5th Cir. 2008).

Petitioners argue that the car and truck expense deductions for the respective years at issue are justified because Dr. Bey's business requires her to travel frequently to her clients' personal residences. Petitioners assert that Dr. Bey's willingness to allow RA Enriquez to examine her computer--which petitioners claim contained the necessary information--qualifies as sufficient substantiation.

Respondent argues that petitioners did not provide RA Enriquez or the Court with adequate records or sufficient evidence as required under section 274. RA Enriquez testified that during the audit Dr. Bey did not provide him with any documentation to substantiate the car and truck expenses or even inform him that she traveled to her clients' personal residences.

After reviewing the record, we do not see any evidence corroborating the existence of reported car and truck expenses except for petitioners' self-serving testimony. We agree with respondent that petitioners' failure to substantiate the respective car and truck expenses justifies a complete disallowance. Accordingly,

[*21] we sustain respondent's disallowance of petitioners' claimed Schedule C car and truck expense deductions for the years at issue.

B.      Deductibility of Schedule E Repair Expenses

Petitioners claimed repair expense deductions of $32,450 and $20,055 for the respective years at issue. Respondent denied these deductions in their entirety.

Section 212 allows a deduction for ordinary and necessary expenses paid or incurred while managing or maintaining property held for the production of income. To be entitled to a deduction, a taxpayer must meet applicable substantiation requirements by keeping adequate records. Sec. 6001; Roberts v. Commissioner, 62 T.C. 834, 836-837 (1974); sec. 1.6001-1(a), (e), Income Tax Regs. Taxpayers who fail to substantiate any item may be denied the claimed deduction. Hunter v. Commissioner, T.C. Memo. 2014-164.

Petitioners argue that respondent's disallowance of all the repair expense deductions for the years at issue is arbitrary and erroneous. Petitioners assert that they had records to substantiate the respective expenses and that they provided sufficient evidence of those expenses for the years at issue.

Respondent argues that petitioners failed to meet their burden of proof. Respondent points out that petitioners did not provide a single document establishing that they incurred the repair expenses reported on Schedules E for the

[*22] years at issue.  Petitioners also did not prove that such expenses were ordinary or necessary and should not be capitalized.

The evidence in the record regarding the repair expense substantiation is almost nonexistent.  A few checks attached to the BDA that could be identified as insurance proceeds for damage to petitioners' property are insufficient to qualify as proper substantiation without underlying support, such as receipts, invoices, purchase orders, or similar documentation.  Petitioners' self-serving testimony is unpersuasive.  See Tokarski v. Commissioner, 87 T.C. 74, 77 (1986).  Moreover, petitioners' testimony contradicts the positions they took on the 2011 and 2012 tax returns in that they claimed repair expense deductions for what may have been covered by insurance or other third-party payments, such as security deposits.  In addition, in 2011 petitioners tried to claim on their Schedule E a deduction for repair expenses they incurred on their personal residences, which is clearly outside the scope of section 212.  Under these circumstances, we hold that petitioners did not meet their burden of proof to substantiate the repair expenses.  Accordingly, we sustain respondent's disallowance of petitioners' repair expense deductions for those expenses for the years at issue.

[*23] III.    Unreported Income

Gross income includes all income from whatever source derived unless otherwise specifically excluded.  Sec. 61(a).  The definition of gross income broadly includes any instance of undeniable accession to wealth, clearly realized, and over which the taxpayer has complete dominion and control.  Commissioner v. Glenshaw Glass Co., 348 U.S. 426, 431 (1955).  Section 6001 requires a taxpayer to keep books and records sufficient to establish the taxpayer's gross income, deductions, losses, and credits.  Sec. 1.6001-1(a), Income Tax Regs.  Section 7602 authorizes the Commissioner to examine books, papers, records, and other data potentially relevant or material to the determination of a taxpayer's Federal income tax liability.  Where an individual fails to maintain adequate books and records, the Commissioner may reconstruct the taxpayer's income using any method which, in his opinion, clearly reflects income.  Sec. 446(b); see also Petzoldt v. Commissioner, 92 T.C. 661, 686-687 (1989); Dyer v. Commissioner, T.C. Memo. 2012-224, at *16; Gutierrez v. Commissioner, T.C. Memo. 2003-321, slip op. at 8 (citing Holland v. United States, 348 U.S. 121, 130-132 (1954)).  The reconstruction of a taxpayer's income need only be reasonable in the light of the surrounding facts and circumstances.  Petzoldt v. Commissioner, 92 T.C. at 687.

[*24] One such method of income reconstruction, the bank deposits method, has long been sanctioned by the courts. See, e.g., Burke v. Commissioner, 929 F.2d 110, 112 (2d Cir. 1991), aff'g in part, vacating in part T.C. Memo. 1989-671. Under the bank deposits method, bank deposits and cash expenditures are totaled unless the cash was derived from bank withdrawals. Id. Amounts representing proceeds of loans, redeposits, and identifiable nonincome are then subtracted, and the remainder is treated as taxable income unless it is shown to be otherwise. Id.; see also Clayton v. Commissioner, 102 T.C. 632, 645-646 (1994) (taxpayer bears burden of showing that Commissioner's determination is incorrect). But see Teichner v. Commissioner, 453 F.2d 944, 945-949 (2d Cir. 1972) (bank deposits determined to be nonincome fruits of check-kiting scheme), rev'g and remanding T.C. Memo. 1970-31. Mistakes in a bank deposits analysis do not necessarily invalidate the results. See Dyer v. Commissioner, T.C. Memo. 2012-224.

Respondent argues that RA Enriquez's BDA demonstrates that the respective checks included in the BDA are unreported taxable income because up until the trial petitioners did not raise any objections to the BDA.

Petitioners argue that numerous errors within the BDA warrant excluding the entire BDA as an unreliable basis for determining unreported income.

[*25] We acknowledge that RA Enriquez's BDA had certain flaws, but we do not agree that those flaws warrant setting it aside. In the light of the utter lack of cooperation from petitioners during the audit, RA Enriquez and respondent showed substantial and reasonable efforts in compiling the BDA and making sure the findings are correct. Matching information on numerous deposits from five banking accounts is a difficult task. With that in mind, on the basis of the parties' testimony at trial and the record in this case, we conclude that the BDA should be modified as set forth below.

First, we find that items that respondent conceded should not be included in the BDA should be excluded from the calculations. In addition, the $550 check that respondent asked us to include in the BDA should be so included because petitioners failed to show it is nontaxable.

Second, we find that Mr. Lawson's net wages that were excluded twice from the BDA should be excluded only once.

Third, we find that the amounts of rent unreported on Schedule E for the 2012 tax return regarding the Hawthorne Property were properly included in the BDA with the exception of one check that was returned for insufficient funds. See Exhibit 36-R at 0017, 0101 (check for $1,150 from Tiasha Wamack, subsequently returned).

**[\*26]** Fourth, we find that the alleged security deposits for rental properties have been properly included in the BDA because petitioners failed to meet the burden of proof on this issue. Petitioners did not provide the Court with sufficient records or other evidence corroborating their self-serving testimony. Further, there is no evidence in the record to support that said security deposits were ever returned to lessees.

Fifth, we find that the checks Dr. Bey issued to herself to transfer the funds from one bank account to another and the checks Dr. Bey and Mr. Lawson issued to each other should be excluded from the BDA to the extent described in the findings of fact. See supra pp. 10-11.

Sixth, we find that the checks identified as returned for insufficient funds or checks reflecting tax refunds, as described in the findings of fact, see supra pp. 12-13, should be excluded from the BDA.

Seventh, with respect to the alleged loans, funds from offsetting accounts, and deposits for out-of-State relatives, we find that petitioners did not introduce sufficient evidence to refute the BDA findings. Thus, no modification of the BDA is necessary.

Eighth, with respect to the insurance proceeds and payments for the property damage, we find that the petitioners did not meet the burden of proof to

[*27] show that any such receipts were nontaxable. Petitioners' testimony and briefs seem to be inconsistent with the positions they took on their 2011 and 2012 tax returns by claiming large repair expense deductions on Schedules E for rental properties and car and truck expense deductions on Schedules C. Besides petitioners' unpersuasive testimony and sparse information the Court obtained from reviewing the checks attached to the BDA, the record is devoid of any corroborating evidence confirming the details of the insurance policies, whether the insured property was used in petitioners' business, and other details necessary to determine whether the insurance proceeds were taxable or not. For example, Dr. Bey testified that she used personal cars to visit her clients, but the record is silent on whether she used a specific car--here, the Porsche Cayenne--for which she claims to have received a nontaxable insurance payment, in her business. The same goes for the alleged insurance payments covering the damages to petitioners' real estate. There are simply not enough details in the record to tie the payments to specific properties and specific items of damage. Thus, petitioners failed to meet their burden of proof, and the alleged insurance proceeds and payments for the property damage were properly included in the BDA.

[*28] Accordingly, except for the amounts we deemed excluded above, we sustain respondent's determination that the unreported income in the BDA was proper, and petitioners are liable for any resulting deficiencies.

IV.    Litigation Settlement Proceeds

Gross income includes all income from whatever source derived unless specifically excluded.  Sec. 61(a); Simpson v. Commissioner, 141 T.C. 331 (2013).  Proceeds from the settlement of a lawsuit constitute taxable income unless the taxpayer can establish that the proceeds come within the clear scope of a statutory exclusion.  Commissioner v. Schleier, 515 U.S. 323, 336-337 (1995).  Taxpayers generally bear the burden of proving that they fall squarely within the requirements for any exclusion from gross income.  Simpson v. Commissioner, 141 T.C. at 339 (citing Forste v. Commissioner, T.C. Memo. 2003-103).

Under the origin of the claim doctrine, courts look into the nature of the underlying claim to determine whether a settlement payment or judicial award is excludible from gross income and to determine the proper tax treatment of the proceeds.  See United States v. Gilmore, 372 U.S. 39 (1963); Hort v. Commissioner, 313 U.S. 28 (1941).  Courts look to the terms of a settlement agreement to determine whether a settlement is taxable.  See, e.g., Freda v. Commissioner, T.C. Memo. 2009-191, aff'd, 656 F.3d 570 (7th Cir. 2011).  Where

[*29] the agreement is silent as to the basis of the settlement or where the agreement does not specify that the payment was for a reason that a court finds to be nontaxable, this Court has held the settlement payment to be taxable. See, e.g., Freeman v. Commissioner, 33 T.C. 323 (1959); Ahmed v. Commissioner, T.C. Memo. 2011-295, aff'd, 498 F. App'x 919 (11th Cir. 2012).

Petitioners admitted that they received the $31,130 settlement for the claims against BOA but argue that the settlement proceeds are not taxable income under the origin of the claim doctrine. Petitioners assert that the recovered amount constitutes a nontaxable return of funds improperly taken from Mr. Lawson.

Respondent argues that the settlement agreement between Mr. Lawson and BOA does not specify a nontaxable reason for the settlement and therefore the settlement proceeds are taxable.

Petitioners failed to establish that the settlement proceeds are within the clear scope of a statutory exclusion. Examination of the complaints filed in cases forming the basis for the settlement at hand shows that Mr. Lawson alleged that BOA acted negligently in transferring the funds from his account. As a condition to receiving the settlement payout, Mr. Lawson executed a general release of his claims against BOA and agreed to the filing of stipulations of discontinuance with prejudice in both cases. The general release and the stipulations are silent as to

**[\*30]** whether the payment was supposed to restore funds taken from Mr. Lawson's account or was just to get rid of a nuisance lawsuit. In any event, we note that petitioners failed to point to any statutory exception, such as section 104(a)(2), or any other authority that would allow us to conclude that the settlement proceeds in the current case should be treated as nontaxable. Thus, we hold that petitioners did not meet their burden of proof in demonstrating that the settlement funds were nontaxable. Accordingly, RA Enriquez properly included the settlement proceeds as unreported income for the 2012 tax year.

V.     Sections 6651(a)(1) and 6662(a)

The burden of production is on the Commissioner with respect to the liability of a taxpayer for any penalty or addition to tax. Sec. 7491(c); Rule 142(a)(2). To meet this burden, the Commissioner must produce sufficient evidence indicating that it is appropriate to impose an addition to tax or a penalty on the taxpayer. Higbee v. Commissioner, 116 T.C. 438, 446-447 (2001). Because respondent first introduced the issue of penalties under section 6662(a) in his amended answer, respondent bears the burden of proof on this issue under Rule 142(a)(1).

[*31] A.    Section 6651(a)(1)

Section 6651(a)(1) imposes an addition to tax for failure to timely file a Federal tax return when due equal to 5% for each month that the return is late, not to exceed 25%. The addition to tax for failure to file timely does not apply where the failure was due to reasonable cause and not due to willful neglect. Id. The burden of showing reasonable cause under section 6651(a) remains on the taxpayer. See Higbee v. Commissioner, 116 T.C. at 446-447.

Petitioners admitted that they filed their 2012 tax return late. Thus, respondent has met the burden of production with regard to an addition to tax under section 6651(a)(1) for the 2012 tax year. Petitioners did not argue during the trial or in their briefs that their failure to timely file the 2012 tax return was due to reasonable cause and not willful neglect. Accordingly, we sustain respondent's determination and we hold that petitioners are liable for an addition to tax under section 6651(a)(1).

B.    Section 6662(a)

Section 6662(a) imposes a 20% accuracy-related penalty on the underpayment of tax required to be shown on a return. Section 6662(b)(1) and (2) imposes an accuracy-related penalty on a portion of any underpayment which is attributable to (1) negligence or disregard of rules or regulations or (2) a

[*32] substantial understatement of income tax. Negligence includes "any failure to make a reasonable attempt to comply with the provisions" of the Code or to exercise "ordinary and reasonable care in the preparation of a[n] [income] tax return." Sec. 6662(c); sec. 1.6662-3(b)(1), Income Tax Regs. Negligence also includes any failure to maintain adequate books and records or to substantiate items properly. Sec. 1.6662-3(b)(1), Income Tax Regs. Disregard includes "any careless, reckless or intentional disregard" of the rules or regulations. Id. subpara. (2). A substantial understatement of income tax exists if the amount of the understatement exceeds the greater of 10% of the tax required to be shown on the return or $5,000. Sec. 6662(d)(1)(A). Once the Commissioner has met the burden of production, the taxpayer must come forward with persuasive evidence that the imposition of a penalty is inappropriate because, for example, the taxpayer acted with reasonable cause and in good faith. Sec. 6664(c)(1); Higbee v. Commissioner, 116 T.C. at 448-449.

The exact amount of petitioners' understatement for each of the years at issue shall be computed as a part of the Rule 155 calculations. Even if petitioners' understatements are not substantial within the meaning of section 6662(d)(1)(A), respondent may meet his burden by demonstrating that petitioners negligently claimed deductions to which they are not entitled.

[*33] Respondent argues that petitioners failed to keep adequate books and records because they did not produce records sufficient to substantiate their expenses during the audit or to this Court during the trial. Respondent contends that this basis alone is sufficient to impose section 6662(a) accuracy-related penalties for the years at issue.

Petitioners argue that they maintained appropriate records and offered them for RA Enriquez's examination, which demonstrates a good-faith attempt to comply with the Code. Petitioners assert that RA Enriquez's failure to "avail himself" of access to petitioners' records stored on a computer during his two site visits should not subject them to accuracy-related penalties.

We agree with respondent. Petitioners failed to produce documentation during the audit and at trial to substantiate their expenses. Petitioners' allegations that RA Enriquez should have reviewed all their business records during a short site visit are misguided and do not qualify as a good-faith attempt to comply with the requirements of the Code. The BDA shows petitioners failed to include in income numerous deposits and failed to maintain adequate books and records to explain the nature of many items, including the alleged insurance payments for property damage and security deposits. Finally, petitioners failed to include in income the proceeds of the BOA settlement. Taken together, all these

[*34] circumstances show that petitioners did not make a reasonable attempt to comply with the provisions of the internal revenue laws or to exercise ordinary and reasonable care in the preparation of a tax return.

Petitioners also failed to show that they acted with reasonable cause under section 6664(c). Petitioners' conduct with respect to keeping adequate records and making these records available in the course of the audit shows they were negligent. Thus, respondent has met his burden of proof with regard to imposing accuracy-related penalties under section 6662(a). Accordingly, we sustain respondent's determination and hold that the imposition of accuracy-related penalties under section 6662(a) is appropriate.

We have considered all of the arguments raised by petitioners and respondent, and to the extent not discussed herein we conclude they are irrelevant, moot, or without merit.

To reflect the foregoing and concessions by respondent,

<u>Decision will be entered</u>

<u>under Rule 155</u>.